**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATLINK, INC., a California corporation, et al., <br><br>Plaintiff, <br><br>vs. <br><br>MATLINK, INC., a Nevada corporation, et al., <br><br>Defendant. | CASE NO. 06CV1496 R (RBB) <br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR A STAY OR IN THE ALTERNATIVE TO ABSTAIN, TO DISMISS OR FOR MORE DEFINITE STATEMENT |

## I.  Introduction

Defendants Matlink, Inc., a Nevada corporation ("Matlink-NV"), Drayton Richdale Corporation, Antonio Arnel Maquera, Larry Naritomi, Joseph Henn, Christy Stevenson, Stephen Lindsley, and Don Wight (collectively "defendants") have filed a motion for stay of action or, in the alternative, to abstain, to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or for more definite statement pursuant to Fed.R.Civ.P. 12(e).  For the reasons set forth below, the motion is granted in part and denied in part.

## II.  Background

Plaintiffs Matlink, Inc., a California corporation ("Matlink-CA") and Craig Freeman (collectively "plaintiffs") entered into an Agreement in Principal with Gemelli Capital Trust whereby the parties agreed, *inter alia*, "to pool their resources and combine their expertise in completing development of new Technology, improving the existing Technology and

commercializing this said Technology for financial gain . . . ." At some point, the relationship between the parties soured, and plaintiffs brought suit in state court against Maquera, both individually and as Trustee of the Gemelli Capital Trust, against Matlink-NV, which was allegedly formed by Maquera and which is allegedly a wholly-owned subsidiary of Drayton Richdale Corporation, and against Drayton Richdale Corporation, of which Maquera is allegedly an owner, officer, and member of the board of directors. Plaintiffs' state court lawsuit focuses on the ownership of certain patented software technology known as the Materials and Supplies Ordering System or "MSOS."

Plaintiffs later brought the present law suit in federal court against defendants, some of whom are named in the state court action and some of whom are not. Unlike the state court lawsuit, the present federal lawsuit focuses on defendants' alleged wrongful use of the Matlink mark.

**III.     Analysis**

  **A.     Should the Court Stay or Dismiss the Present Action?**

The general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." McClellan v. Carland, 217 U.S. 268, 282 (1910). However, as with any general rule, there are exceptions.

  **1.     Colorado River Doctrine**

In their motion, defendants move pursuant to Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) to stay this action pending the outcome of the state court action. In Colorado River, the Supreme Court concluded that the federal court should defer to the state court proceeding when both actions involved competing water rights in a single river system. In Colorado River, the Supreme Court upheld the *dismissal* of the federal action. However, the Ninth Circuit has expanded the Colorado River doctrine to justify stays as well as dismissals. See Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 912 (9th Cir. 1993); Attwood v. Mendocino Coast Dist. Hosp, 886 F.2d 241, 245 (9th Cir. 1989). Although various Ninth Circuit cases refer to the Colorado River doctrine as one of abstention,

other Ninth Circuit cases have noted that it is not an abstention doctrine. See Attwood, 886 at 243. For purposes of this order, it will be referred to as an abstention doctrine.

The Colorado River doctrine "rests on 'considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Attwood, 886 F.2d at 243 (quoting Colorado River, 424 U.S. at 817 (in turn quoting Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952))). "In Colorado River, the Court articulated four factors for determining whether sufficiently *exceptional circumstances* exist to warrant abstention: (1) whether either the state or federal court has exercised jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the forums obtained jurisdiction." 40235 Washington Street Corp. v. Lusardi, 976 F.2d 587, 588 (9th Cir. 1992) (emphasis added). The Court later added two more considerations: "(5) whether federal or state law controls the decision on the merits; and (6) whether the state court can adequately protect the rights of the parties." Id. This list of factors is not exhaustive, and other factors may be considered. Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989).

Importantly, while "exact parallelism" between the two actions need not exist, the state and federal claims must be "substantially similar" in order for the Colorado River doctrine to apply. Id.; see also Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1372 (9th Cir. 1990). Thus, the preliminary issue is whether the state court claims and the claims asserted in the present action are substantially similar to warrant application of the Colorado River doctrine.

In the present federal action, plaintiffs bring both federal Lanham act claims as well as state law claims. Plaintiffs seek to preclude defendants from using the Matlink mark and also seek damages for defendants' past use of the Matlink mark. In the state court action, plaintiffs invoke state law and seek declarations regarding the validity of certain agreements and UCC filings as well as a declaration regarding ownership of the MSOS, which ownership is dependent upon the interpretation and validity of the parties' agreements and UCC filings. Plaintiffs also bring various claims for damages which are predicated upon allegations that the state court defendants never intended to perform under the Agreement in Principal but, rather,

1 entered into an agreement with plaintiffs in order to position themselves to assume Matlink-
2 CA's identity and thereby wrongfully reap financial rewards. Finally, plaintiffs in the state
3 court action seek an injunction enjoining defendants from claiming they are Matlink-CA. As
4 plaintiffs persuasively explained at oral argument, such an injunction is aimed at precluding
5 defendants from representing themselves as being the corporation Matlink-CA, as opposed to
6 precluding defendants from using the Matlink mark per se.

7 The state court action, with its focus on the parties' conduct as it relates to the
8 ownership of the patent, is not sufficiently similar to the present action, with its focus on
9 defendants' use of the Matlink mark, to warrant Colorado River abstention. In other words,
10 given that the Colorado River doctrine is concerned with conserving judicial resources and
11 comprehensive disposition of litigation, it is difficult to conclude that the state court claims and
12 plaintiffs' present claims are substantially similar in any relevant sense. Cf. Nakash, 882 F.2d
13 at 1416 (finding actions "substantially similar" where all of the disputes concerned the parties'
14 conduct since the time of the plaintiffs' purchase of a portion of the defendants' company and
15 where the federal action was "but a 'spin-off' of more comprehensive state litigation");
16 American Intern. Underwriters (Philippines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1255
17 (9th Cir. 1988) (concluding dismissal under Colorado River was appropriate where the plaintiff
18 brought an action in state court and then, two an one-half years later, brought an action in
19 federal court "alleging the same facts and claims"); 40235 Washington Street Corp. v. Lusardi,
20 976 F.2d 587, 588 (9th Cir. 1992) (plaintiff in federal action sought declaration that tax sale
21 of its property was void after state action was filed by purchaser seeking to quiet title to
22 property; held, district court properly stayed case pursuant to Colorado River doctrine because
23 the state and federal cases involved "identical issues"); Tucker v. First Maryland Sav. & Loan,
24 Inc., 942 F.2d 1401, 1408 (9th Cir. 1991) (concluding that application of Colorado River
25 doctrine was not warranted where there was no pending state proceeding that was "attempting
26 to resolve" the claims brought in the federal action). The fact that the claims in the state court
27 action and the claims in the present action are not substantially similar is sufficient to preclude
28 application of the Colorado River doctrine. Nonetheless, for the sake of thoroughness, the

court will briefly address the other relevant factors.

Defendants contend that abstention is appropriate because the state court has asserted jurisdiction over certain property (which defendants contend includes the Matlink mark) and is in the process of determining the rightful owner of said property. Defendants cite <u>Farmers Loan & Trust Co. v. Lake Street Elevated Railroad Company</u>, 177 U.S. 51 (1900), which was decided long before <u>Colorado River</u>. In that case, a federal action was brought and then a state action involving the same issues was brought. The court concluded that the defendants could not defeat the federal court's jurisdiction "by bringing suit in another court and procuring an ex parte injunction seeking to restrain the service of process already issued." <u>Id.</u> at 61. The court explained:

> The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons.
>
> Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. [citations omitted]

<u>Id.</u> Here, the res involved in the state court suit is the MSOS, whereas the res in the present action is the Matlink mark. Thus, the state court will not, as defendants suggest, be compelled to assume possession and control of the Matlink mark. Moreover, defendants' contention to the contrary notwithstanding, the state court has not exercised, and has not purported to exercise, jurisdiction over the Matlink mark. This is evident from a review of the preliminary injunction, which was prepared by plaintiffs and which makes no mention of the state defendants' use of the Matlink mark. Rather, the state court injunction is focused solely on the patent. It enjoins the state court defendants from filing changes to the power of attorney or filing patent assignments with the USPTO regarding the MSOS, prevents the state court

1  defendants from filing UCC financing statements regarding the MSOS, precludes the state
2  court defendants from raising capital based on a claim of ownership of the MSOS, and
3  precludes the state court defendants from taking any action that in any way interferes with the
4  ownership rights of the MSOS.  Because the state court has not asserted jurisdiction over the
5  Matlink mark and there is no reason to believe that it will do so in the future, this factor does
6  not weigh in favor of application of the Colorado River doctrine.

7  Another factor to consider is whether the imposition of a stay will help avoid piecemeal
8  litigation.  "Piecemeal litigation occurs when different tribunals consider the *same issue*,
9  thereby duplicating efforts and possibly reaching different results."  See American Intern.
10  Underwriters (Philippines), Inc., 843 F.2d at 1258 (emphasis added).  Defendants have failed
11  to demonstrate that allowing the present federal action to proceed will result in piecemeal
12  litigation.  Defendants' apparent defense in both actions is that they have a secured interest in
13  the property at issue (there, the patents; here, the Matlink mark) as a result of agreements
14  between the parties and certain UCC filings.  And, as a result of this defense, it very well may
15  be that the state court and this court will have to examine those agreements and filings.
16  However, the state court will be looking for an agreement regarding the patents, and this court
17  will be looking for an agreement regarding the Matlink mark.  Moreover, the state court will
18  consider whether the UCC filing created a secured interest in the patent, while this court must
19  consider whether the UCC filing created a secured interest in the Matlink mark.  Because these
20  inquiries are different, the result will not be piecemeal litigation.  Thus, this factor weighs
21  against the imposition of a stay.

22  Another factor weighing against the entry of a stay is the fact that there is no basis for
23  finding that the federal forum is inconvenient.

24  Factors weighing in favor of abstention is that the state court action was filed first and
25  the fact that the claims asserted in this action could be brought in the state court action because
26  state courts have concurrent jurisdiction over Lanham Act claims.

27  Finally, both federal and state law control the decision on the merits of the claims in the
28  present action. Thus, this factor is neutral.

In summary, having considered the relevant factors, the court concludes that abstention under Colorado River is not warranted. The claims in the state court action and the present action are not substantially similar, and, therefore, there is little chance of this court and the state court duplicating efforts. Moreover, the state court has not exercised jurisdiction over the Matlink mark, and there is no reason to believe that it will do so in the future. Because the purpose behind the doctrine is not implicated here, the motion to stay this action pursuant to Colorado River is denied with respect to plaintiffs' Lanham Act and state law trademark claims.

### 2. Younger Abstention

In their reply, defendants change tack and seek a stay or dismissal pursuant to Younger v. Harris, 401 U.S. 37 (1971). The Younger doctrine is not predicated upon concerns regarding inconsistent results between state and federal proceedings; rather, Younger and its progeny "espouse a strong federal policy against federal-court *interference* with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431-432 (1982) (emphasis added); see also Hirsh v. Justices of Supreme Court of State of Cal., 67 F.3d 708, 712 (9th Cir. 1995); Meredith v. Oregon, 321 F.3d 807, 817 (9th Cir. 2003). As explained in M&A Gabaee v. Community Redevelopment Agency of City of Los Angeles, 419 F.3d 1036 (9th Cir. 2005):

> The principle behind the Supreme Court's initial invocation of the abstention doctrine in Younger was its conviction that "[s]ince the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." 401 U.S. at 43, 91 S.Ct. 746. Under the system the Court called "Our Federalism," it explained, "*the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.*" Id. at 44, 91 S.Ct. 746. Thus, the Court concluded, "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." Id. at 45, 91 S.Ct. 746. *In short, the driving principle behind Younger was that in matters of special concern to the states, federal courts should avoid depriving the state courts of the opportunity to adjudicate constitutional issues.*

1   Id. at 1039-40 (emphasis added).  Thus, "[a]s a threshold matter, for Younger abstention to
2   apply, the federal relief sought must interfere in some manner with the state litigation." Baffert
3   v. California Horse Racing Bd., 332 F.3d 613, 617 (9th Cir. 2003).

4         A federal court "must abstain to avoid interference in a state-court civil action when
5   three tests are met."  M&A Gabaee, 419 F.3d at 1039.  First, there must be ongoing state
6   proceedings with which the federal action would interfere.  Id.  Second, the state proceedings
7   must "implicate important state interests."  Id. Third, there must be "an adequate opportunity
8   in the state proceedings to raise federal questions." Gartrell Constr. Inc. v. Aubry, 940 F.2d
9   437, 441 (9th Cir. 1991) (citing Middlesex County Ethics Comm., 457 U.S. at 432); see also
10  Woodfeathers, Inc. v. Washington County, Or., 180 F.3d 1017, 1020 (9th Cir. 1999) (citing
11  Gartrell)

12        The classic factual scenario justifying Younger abstention is where a plaintiff in a
13  federal action seeks to enjoin a state proceeding.  In such a case,  the maintenance of the
14  federal action would clearly interfere with the state action.  See, e.g., Younger, 401 U.S. 37
15  (declining to enjoin earlier-filed state court criminal prosecution); Middlesex County Ethics
16  Comm., 457 U.S. 423 (finding Younger abstention appropriate where federal action was filed
17  to enjoin pending state attorney disciplinary proceedings on the ground that the disciplinary
18  rules violated federal constitutional rights).  Here, plaintiffs seek to enjoin defendants, not the
19  state court proceedings. Thus, this is not a classic case for Younger abstention. And,
20  defendants have failed to explain how any such injunction issued in the present case could
21  possibly interfere with the state court proceedings.

22        Plaintiffs also seek damages.  The maintenance of a damages action will not usually
23  interfere with a state proceedings. However, the Ninth Circuit has recognized that the
24  maintenance of a federal action for damages will interfere with state proceedings where a
25  damages award "would have the same practical effect as a declaration or injunction on pending
26  state proceedings." Gilbertson v. Albright, 381 F.3d 965, 968 (9th Cir. 2004).

27        In Gilbertson, the federal plaintiff "was a land surveyor whose Oregon license to survey
28  was revoked and not reinstated by the State Board of Examiners for Engineering and Land

1  Surveying (the Board)." Id.  While his appeal of the Board's decision was pending before the
2  Oregon Court of Appeals, Gilbertson filed a federal action seeking money damages from
3  members of the Board for violating his federal constitutional rights. The Ninth Circuit, sitting
4  en banc, concluded that Younger applied despite the fact that Gilbertson was bringing an
5  action at law for damages.

6  Clearly, for Gilbertson to be entitled to damages in the federal action, there would have
7  to have been a determination that the state proceeding violated Gilbertson's rights, which
8  determination would have the same practical effect in terms of interfering with the state
9  proceeding as a declaration that the state proceeding violated his rights or an injunction
10  enjoining the proceeding on the grounds that it violated his rights. Here, as noted *supra*, the
11  state court action is focused on ownership of a patent, while the claims asserted in the present
12  action are focused on defendants' allegedly wrongful use of the Matlink mark.  Defendants
13  have failed to explain how an award of damages for the wrongful use of the Matlink mark will
14  have the "same practical effect" as a injunction on the state court proceedings so as to interfere
15  with the state court proceedings.

16  Because defendants have failed to demonstrate that the maintenance of the present
17  action would interfere with the state court action, application of the Younger doctrine is not
18  warranted.

19  An additional reason why Younger abstention is in appropriate is that the state court
20  action does not involve important state interests.  "Younger abstention is appropriate only if
21  the federal action would affect important state interests that are 'vital to the operation of state
22  government.'"  Polykoff v. Collins, 816 F.2d 1326, 1332-33 (9th Cir. 1987) (quoting Dayton
23  Christian Schools, 106 S.Ct. at 2723). Defendants' contention to the contrary notwithstanding,
24  Harper v. Public Service Com'n of W. Va., 396 F.3d 348 (4th Cir. 2005) is not authority for
25  the proposition that an important state interest is at issue in the state court suit because
26  Harper's reference to the state having an important interest in property law was a reference to
27  real property law, not intellectual property law. See id. at 352 ("Similarly, property law
28  concerns, such as land use and zoning questions, are frequently "important" state interests

1  justifying Younger abstention."); see also Joseph A. ex rel. Corrine Wolfe v. Ingram, 275 F.3d
2  1253, 1274 (10th Cir. 2002) (noting that "zoning and land use issues are of traditional
3  significance to states").  Simply put, California does not have a strong interest in determining
4  the ownership of the federal patent at issue in the state court action.  If such an interest were
5  to be found here, it would be hard to imagine a state court suit which did not implicate an
6  important state interest.

### B. Motion to Dismiss for Failure to State a Claim

Defendants also move to dismiss certain claims for failure to state a claim pursuant to Fed.R.Civ.P.12(b)(6).

### 1. Failure to Plead with Particularity Civil Conspiracy to Commit Fraud

Defendants, relying on Wasco Products, Inc. v. Southwall Technologies, Inc., 435 F.3d 989, 992 (9th Cir. 2006), contend that plaintiffs have failed to properly allege a civil conspiracy.  "[U]nder federal law a plaintiff must plead, at a minimum, the basic elements of a civil conspiracy if the object of the conspiracy is fraudulent."  Id. at 991.  Moreover, "California law does not appear to differ from federal law on this issue." Id. at 992. "Under California law, '[t]o state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts.'" Id. (quoting Cellular Plus, Inc. v. Superior Court, 14 Cal.App.4th 1224, 18 Cal.Rptr.2d 308, 314 (1993) (internal quotations and citations omitted)).

Here, plaintiffs do not sufficiently allege the formation and operation of the conspiracy, nor do they sufficiently allege the overt acts committed in furtherance of the conspiracy.  Accordingly, the motion is granted with respect to plaintiffs' conspiracy allegations; however, plaintiffs will be given leave to amend the complaint to add the necessary allegations.

### 2. Allegations Against Stephen Lindsley

Defendant Lindsley moves to dismiss the complaint as to him on the ground that plaintiffs have not complied with California law regarding the maintenance of a lawsuit against an attorney arising out of the attorney's representation of the client.  However, from the

allegations of the complaint, it appears defendant Lindsley is being sued in his capacity as an owner, officer and member of the board of directors of defendant Drayton and Matlink-NV and not in his capacity as an attorney representing a client. Accordingly, the motion to dismiss the complaint as to defendant Lindsley is denied.

### 3. Failure to Plead Fraud With Particularity

Defendants claim that plaintiffs have failed to allege fraud with particularity. A review of the present complaint reveals that plaintiffs are not alleging a fraud claim *per se*. Rather, in paragraphs 10 and 18 plaintiffs are alleging it would promote and sanction a fraud if the court treats Matlink-NV, Drayton and the individual defendants as separate and distinct for purposes of imposing liability. In other words, plaintiffs are essentially arguing that the court should "pierce the corporate veil" and impose liability under an "alter ego" theory of liability. Under such circumstances, the alleged fraud would be the result of the court's failure to apply these doctrines, not from defendants' conduct. Under such circumstances, Rule 9(b) does not require that plaintiffs plead fraud with particularity.

### 4. Failure to Properly Plead the Alter Ego Theory of Liability

Finally, defendants contend that plaintiffs have failed to plead the alter ego theory of liability with particularity. Fed.R.Civ.P. 9 does not require that the alter ego theory be alleged with particularity. However, a plaintiff must plead sufficient facts to demonstrate "(1) that the person exercised such complete dominion and control 'in respect to the transaction attacked' that the corporation had 'at one time' no separate will of its own; and (2) that this domination was used to 'commit fraud or wrong' against the plaintiff, which proximately caused the plaintiff's injury." Kaplan v. Aspen Knolls Corp., 290 F.Supp.2d 335, 340 (E.D.N.Y. 2003) (quoting American Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir.1988)). Here, plaintiffs have failed to sufficiently allege that the defendants' misuse of the corporate form caused plaintiffs' injury. See id. ("Even assuming these claims establish Mazzuoccola was using the corporate defendant as an alter ego, these allegations do not establish that Mazzuoccola's use of the corporate defendant harmed plaintiff."). Accordingly, the motion to dismiss on this ground will be granted. However, because it is not beyond doubt

that plaintiff cannot amend to state a claim for alter ego liability, plaintiff will be granted leave to file an amended complaint.

### C. Motion for More Definite Statement

Finally, defendants contend in a conclusory fashion that the court should order plaintiffs to provide a more definite statement pursuant to Rule 12(e). Rule 12(e) provides in relevant part that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Defendant has failed to demonstrate that the complaint is so vague and ambiguous that it cannot reasonably be required to frame a responsive pleading. Thus, the motion for more definite statement is denied.

## IV. Conclusion

For the reasons set forth below, defendant's motion for stay of action or, in the alternative, to abstain, to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or for more definite statement pursuant to Fed.R.Civ.P. 12(e) is granted in part and denied in part. Should plaintiffs wish to proceed on the ground that defendants were engaged in a civil conspiracy to commit fraud and on the theory of alter ego liability, plaintiffs must file an amended complaint that contains more specific allegations as set forth in this order. The amended complaint shall be filed on or before Monday, December 4, 2006. The time for defendants to file an answer or other responsive pleading shall begin to run on December 4, 2006. The motion is denied in all other respects.

**IT IS SO ORDERED.**

DATED: November 16, 2006

_____
John S. Rhoades, Judge
United States District Court